Sutliff, C. J., and Peck, Brinkerhoff and Scott, JJ., concurred.

———•◦•———

John L. Gill *v.* William L. Miner.

1. When a judgment debtor in a civil action is imprisoned under an order of arrest issued on the judgment from the court of common pleas, and the sheriff or jailor demands from the judgment creditor the payment of jail fees weekly in advance, and such demand is not complied with, the sheriff is thereupon justified in permitting the prisoner to go at large.

2. In an action against a sheriff for permitting the escape of a prisoner in custody under civil process, and such prisoner was by law privileged from arrest, such privilege is personal to the party to whom it appertains, and can not be made available to the sheriff in bar of the action.

ERROR to the court of common pleas of Franklin county. Reserved in the district court.

The original action was brought in the court of common pleas by Gill against Miner, as sheriff, for an escape.

The petition avers the recovery by Gill, in Franklin common pleas, at the March term, 1856, of a judgment against one Josiah Seiber, for $4731.08, and $32.29 costs; and that he obtained from the judge of that court an order for the arrest of Seiber, which, being first indorsed with the exact amount of the judgment and costs, was delivered to Miner, as sheriff, to execute, and commanded him, as sheriff, to arrest Seiber and commit him to the jail of the county, and keep him there until he paid the judgment, or was discharged according to law. That in the execution of said order, Miner, as sheriff, arrested Seiber, November 6, 1856, and committed him to said jail and kept him there until April 21, 1857, when the defendant—still being sheriff—wrongfully and voluntarily permitted Seiber to escape and go at large without the leave, but against the will of the plaintiff, Gill, and without Seiber having paid the judgment, or having been discharged according to law, whereby the plaintiff is deprived of the means of collecting his said judgment, but has lost the same, to his damage $8000, etc.

The defendant, Miner, answered:

1. The first answer admits the recovery of the judgment, the order of arrest, and the arrest; but denies that the arrest was legal, because Seiber, when arrested, was privileged therefrom as a suitor who had been in attendance on said court on the day he was arrested, and had not had time to return home when he was arrested, and that Seiber then claimed his privilege.

2. The second answer avers that the arrest was illegal, on the ground that Seiber was not furnished with a copy of the affidavit upon which the order for his arrest was issued.

3. The third answer reads as follows: "This defendant, for a further defense, says, that after the said Gill had caused the said Seiber to be arrested, as in the petition

alleged, and committed to jail, as therein set out, he, the said Gill, did not pay the jail fees of the said Seiber weekly in advance, though, from time to time, requested so to do by the jailor of said county of Franklin, as by the statute in such case made and provided. Wherefore this defendant asks to be hence dismissed, with his costs."

4. The fourth answer avers that when Seiber was arrested, and at the time of his escape, he was insolvent, and therefore the escape was no damage to Gill.

To answers 2, 3 and 4, Gill demurred, on the ground of insufficiency.

The demurrers to the 2d and 4th answers were sustained. The demurrer to the 3d answer was overruled, and Gill excepted.

To the 1st answer Gill replied, that after Seiber was arrested, he moved the court of common pleas to discharge him upon the same ground alleged in the first defense; that the motion and affidavits thereon were heard, argued and overruled; and that the judgment on that motion is in full force, as will appear by reference to the journal and files.

To this reply the defendant, Miner, demurred, and the demurrer was sustained, and Gill excepted.

Afterward leave of court was given to amend pleadings.

Gill filed an amended reply:

1. To the first defense, of privilege from arrest:

The reply denies that Seiber was privileged from arrest as a suitor in court; but avers that, at the term of the court when Seiber was arrested, he was attending as a criminal, on a charge and indictment for embezzling money while acting as an agent, etc., and that, after his acquittal, Seiber left the court room in which the court was sitting, and was then arrested by the defendant, in the execution, as sheriff, of the order of arrest on said original judgment, and committed to jail; and that said court, then in session, refused to grant a motion made by Seiber, immediately after his arrest, for a discharge therefrom, on the ground of being privileged as a suitor, as set up in said first defense; that said motion was overruled by the court after hearing affidavits and full argu-

ment, and that the judgment overruling the motion is still in full force.

2. To the second answer:

The reply denies that Gill was required to pay Seiber's jail fees weekly in advance; and avers that Gill was always ready and willing to pay said fees, had he been requested so to do by the defendant, Miner, who was the jailor having Seiber in custody, or by any person acting for him.

To this amended reply, No. 1, to the defense of privilege from arrest as suitor, the defendant, Miner, demurred, and the demurrer was overruled.

Miner filed an amended answer, No. 5, which reads as follows:

"The said defendant, for a further answer to the petition of the plaintiff, by leave of the court obtained, says that the said plaintiff ought not to have and maintain his action against this defendant, because he says that the arrest of the said Seiber, in the petition mentioned, was obtained by the illegal contrivance of the said Gill, in the manner following: At the time of the rendition of the judgment in the petition mentioned, to-wit: on the 15th day of April, 1856, said Seiber had become and was then a *bona fide* resident of the state of Iowa, and has continued to be such resident from that time to the bringing of this action.

"Defendant says that after the rendition of said judgment, the said Gill, intending to get the said Sciber within the jurisdiction of the civil process of this court, as hereafter mentioned, did, on or about the 17th day of July, 1856, make his affidavit, charging that said Josiah Seiber had long before that, to-wit: on or about the 19th day of July, 1854, been guilty of embezzling and converting to his own use the money, to-wit: twenty-four dollars, of the said Gill, while employed as the agent of said Gill; and on the 17th day of July, 1856, the said Gill applied for and obtained a requisition from the governor of Ohio, upon the governor of Iowa, for the rendition of said Josiah Seiber, as a fugitive from justice, on said charge; and upon the application of said Gill, in furtherance of his said illegal contrivance, one John

Fleming was appointed the agent of the State of Ohio to receive said fugitive from the authorities of Iowa, and convey him to Franklin county, Ohio, for trial. Defendant says that said Fleming was employed by said Gill for said service, and by him paid for his services and expenses, and that said Gill accompanied said Fleming to Iowa for the purpose aforesaid, and in the matter spent a sum of money much larger than the said sum alleged to have been embezzled.

"Defendant further says, in pursuance of said requisition, the said Seiber was arrested in the State of Iowa, and delivered to said Fleming; and the said Fleming and the said Gill, in furtherance of the said illegal contrivance of said Gill, immediately left the State of Iowa with said Seiber in their custody, and on the 18th day of August, 1856, confined him to the jail of Franklin county, Ohio, on said charge and requisition. Defendant further says, that immediately upon the arrival of Seiber and himself aforesaid, and in further pursuance of his said illegal contrivance, the said Gill caused to be prepared a long affidavit, for the purpose of procuring an execution for the body of said Seiber on said judgment; and on the 19th day of August, 1856, made his oath to the same before the judge of this court, and thereupon the said judge forthwith, as soon as he had examined the same, and on the same day, allowed said execution to be issued, and the same was forthwith issued, and put into the hands of this defendant, then sheriff of said county of Franklin, with instructions to execute the same, if said Seiber should be discharged from said criminal charge; and the said Gill, having his said arrangements so made to effect the arrest of said Seiber on his civil suit, did, on the said 19th day of August, 1856, make another affidavit before one John G. Miller, one of the justices of the peace in and for said county of Franklin, charging said Seiber with said embezzlement in said requisition mentioned, and hereinbefore stated; and thereupon a warrant was issued, and the said Seiber brought before said justice and the trial then and there had, and said Seiber committed to jail on said charge, where he remained until the 7th day of November, 1856, on said charge. Defendant fur-

ther says, that the said Gill, by his attorney, directed the said
sheriff not to execute said execution while the said Seiber
was so imprisoned, and on the 7th day of October, 1856, said
writ was returned, not served, for said reason; the said Sei-
ber then being still in jail on said charge.   Defendant further
says, that on the 6th day of November, 1856, the said Gill,
in pursuance of said illegal contrivance, caused another exe-
cution for the body of said Seiber to be issued on said judg-
ment, and placed in the hands of this defendant, who was
then sheriff of Franklin county aforesaid, directing him to
arrest the said Seiber thereon, in case he should be discharged
from said criminal charge, before he could leave the jurisdic-
tion of the said court.   And on the 7th day of November,
1856, at the county of Franklin aforesaid, the said Seiber
was tried for, and acquitted of, said criminal charge, by a jury,
and thereupon was discharged from custody, and in a very
few minutes thereafter, and as soon as said Seiber left the
court room, and before he had quitted the court house steps,
in said county of Franklin, and State of Ohio, the said Sei-
ber, who was then a resident of the State of Iowa, was ar-
rested on said execution for his body, issued as aforesaid, on
the judgment of said Gill against said Seiber, and from that
time until his pretended escape, he was held in custody on
said arrest, and by no other, although the said Seiber then
objected to his arrest, and claimed to be privileged therefrom
—all of which acts of the said Gill, done for the purpose of
bringing the said Seiber from Iowa to Ohio, on said alleged
criminal charge, and all the acts done to obtain his arrest after
he came to Ohio, on the judgment of said Gill against the said
Seiber, were done, and illegally contrived to be done, for the
purpose of getting said Seiber into the jurisdiction of the
said court, to enable the said Gill to seize the body of said Sei-
ber on said execution for his body on his said judgment, which
he could not have done except for said illegal contrivance.
Defendant says that the arrest in the petition is the same so
illegally obtained; and defendant says that by reason of the
said illegal contrivance of the plaintiff in the manner afore-
said, the said arrest of the said Seiber was illegal and void,

and by reason of the matters aforesaid, said Seiber was privi-leged therefrom, and said plaintiff can not have and maintain his action as aforesaid."

Gill demurred to amended answer 5. The demurrer was overruled and exception taken.

Thereupon Gill filed a reply to that answer. The reply reads as follows:

"The plaintiff, John L. Gill, for reply to the further and amended answer, No. 5, of the defendant, says: That, after the arrest of said Seiber, on the order issued on the judgment in favor of said Gill against him, as set forth in said answer, he made a motion for his discharge from arrest in this court, supported by an affidavit, stating that the said Gill had procured a requisition from the Governor of Ohio on the Governor of Iowa, and brought him on a criminal charge within the jurisdiction of this court, for the purpose of having him arrested upon execution against his person, upon a judgment of this court in favor of said Gill against said Seiber, and that he had prepared an affidavit for an order of arrest, as soon as said Seiber was brought within the jurisdiction of this court, to-wit, on August 19, 1856, and suspended the execution of the order of arrest until the discharge of the said Seiber, by acquittal, upon the criminal charge for which said requisition was issued for him as aforesaid; whereupon he was arrested by said Miner, as sheriff of Franklin county, as set forth in said amended answer, at the instance of said Gill; and the plaintiff avers that the said motion to discharge from arrest was submitted to the court upon the affidavit aforesaid, and other affidavits on said motion, which set up that said arrest was illegal, on the same grounds as claimed in said amended answer; and after full argument by counsel, said motion was overruled by the court, and said discharge refused, and the said Seiber continued in the custody of the said Miner, as sheriff as aforesaid; and the plaintiff avers that the judgment and order of said court, overruling said motion and refusing said discharge, is still in full force, and in nowise reversed or vacated; all of which appears by the journal entry and files touching said motion in said court remaining; of all which

the said defendant, William L. Miner, had notice and full knowledge at the time he permitted said Seiber to escape, as· alleged in said petition."

Miner demurred to this reply. The demurrer being sustained, and exception taken, and Gill not asking to file any further reply to amended answer 5, final judgment was entered in favor of Miner and against Gill for costs.

To reverse this judgment, Gill filed a petition in error in the district court, which was therein reserved to this court. Among the errors assigned are these : that the court of common pleas erred,

1st. In overruling Gill's demurrer to Miner's 3d answer.

2d. In overruling Gill's demurrer to Miner's amended an-· swer No. 5.

3d. In sustaining Miner's demurrer to Gill's reply to said answer No. 5.

*A. G. Thurman* and *L. J. Critchfield,* for plaintiff in error :

1. The facts stated in amended answer, No. 5, do not show the arrest of Seiber to have been effected through any illegal contrivance of Gill. The answer does not negative the guilt of Seiber. The averments of fact in the answer, as distinguished from mere averments of conclusions of law, show that Gill honestly believed Seiber guilty of the crime charged, and had him brought here from Iowa to be tried therefor ; that, so far as was in his power, Gill prosecuted him promptly and earnestly and in good faith. Such being the case, it can not be said, upon the statements of the answer taken all together, that the criminal process invoked by Gill was used as a pretext and illegal contrivance to bring Seiber within the reach of civil process, although Gill had him arrested on civil process.

2. The arrest on civil process is charged to have been made after Seiber was acquitted of the alleged crime and had left the court room, but before he got off the court house steps, Seiber then being a resident of Iowa. The time and place of the arrest seem to be regarded as sufficient to render it illegal. Such is not the law.

Even if the arrest of Seiber, under the order of arrest, was illegal, either on the ground that he was brought within its reach by means of Gill's " illegal contrivance," or upon the ground that he was privileged from arrest as a suitor who had not yet returned home after his acquittal, still it was not competent for the sheriff, after he had arrested Seiber and committed him to jail, to assume judicial functions and decide that the arrest was illegal and void and let him go.

Whatever may have been held elsewhere as to the right of a sheriff to discharge a privileged person whom he has arrested, there is no serious question that he has not such power in Ohio; for :

Our statute (1·S. & C. 84) does not make the arrest of a privileged person void. There is not a word in the statute that makes such an arrest even illegal. It creates a privilege of which the debtor and no one else can take advantage; and how he can take advantage of his privilege is prescribed by the statute itself. Sec. 10. It is by *habeas corpus* or *motion to the court from which the process issued.* This special provision impliedly negatives any right of the sheriff to discharge. To these modes sec. 486 of the code adds another and very comprehensive one. (2 S. & C. 1093.)

Defendant's counsel argue that there is a distinction between cases in which the privilege is by rule of court (as of attorneys, etc., in England and New York), and those in which the privilege is created by statute; and that, consequently, the authorities we cite are inapplicable. There may be a distinction between a case of rule of court privilege and a statute privilege *if the statute declare that the arrest shall be void,* otherwise there is no substantial difference. But, as before said, our statute does not make the arrest void, and it prescribes precisely the same mode of procedure to obtain a discharge that is pursued in the case of rule of court privilege. Formerly an attorney arrested had to sue out a writ of privilege, but it is not so now; he may be discharged on motion. *Cameron* v. *Lightfoot,* 2 W. Bla. 1192.

See *Tarlton* v. *Fisher,* Douglas 671. There the act of Parliament provided that certain persons " *shall not be liable to*

*be arrested* by virtue of any civil process out of any court; and in case they have been, or shall be, so arrested, *shall be discharged therefrom.*" Notwithstanding this express declaration that the persons "*shall not be liable to be arrested,*" and if arrested "*shall be discharged therefrom,*" the court held that the sheriff was not to decide the question of privilege— that it was his duty to arrest—that he had no power to discharge—and that the words "shall be discharged" meant a discharge "*by proper authority;*" that is, "*the court out of which the process issued, or, in vacation, one of the judges.*" See opinions of *Mansfield, Ashhurst & Buller.* Where our statute intends that the sheriff may discharge it expressly so provides. See insolvent debtor's act, 1 S. & C. 700, sec. 22. Whether the debtor be entitled to a discharge on the ground of privilege or upon any other ground, the sheriff can not, except as provided by statute, discharge him; and if he do he is liable for the escape. *Secor* v. *Bell,* 18 J. R. 52; 9 Misso. Rep. 795–6.

3. *Seiber was not a suitor.* *Williams* v. *Bacon,* 10 Wend. 636–7; *Lucas* v. *Albee,* 1 Denio 666; *Hare* v. *Hyde,* 3 Eng. L. & Eq. 435 and notes.

It had been established by the decisions of both the English and American courts that the word "suitor," in statute or rule of court privilege, did not include a defendant in a criminal procedure. When our legislature used that word in the statute, it used it with its established meaning.

4. The right to a discharge is the privilege of the debtor. He may waive it. (3 Eng. L. & Eq. 436–7, note.) He may be concluded in respect to it by judicial decision. The sheriff has nothing to do with it. It does not lie in his mouth to impeach the conduct of the plaintiff and to cry out "*ex dolo malo non oritur actio.*" That is the privilege of the debtor alone.

5. The order and judgment of the court overruling Seiber's motion to be discharged from the arrest, after full hearing, on the day it was made, upon the ground set up in answer 5, that he was privileged from arrest, and that the same was effected through the illegal contrivance of Gill, was, when the

sheriff let Seiber escape, and still is a valid and subsisting judgment of the court. That judgment and order was binding upon Seiber. And what binds the prisoner binds the sheriff; for, surely, the sheriff's right to discharge a prisoner can be no greater than the prisoner's right to be discharged. And the order of court remanding Seiber to the sheriff's custody bound the sheriff to keep him there until he paid the judgment, or was discharged according to law. Had the court, on Seiber's motion, discharged him from arrest, that order would have been the sheriff's justification for not retaining him in custody. The rule must have a converse operation. What concludes a debtor concludes the sheriff when sued for an escape. *Patterson* v. *Westervelt*, 17 Wend. 540, 549; 3 Phil. Ev. 691, 700.

6. As to the question of jail fees:

(*a*.) There is no averment in this answer that Miner let Seiber escape *for the reason* that the jail fees were not paid. An averment of fact is made, but the answer does not aver that Miner permitted the prisoner to escape because of that fact.

(*b*.) In addition to the averment that Gill failed to pay the jail fees, the answer should have stated that the prisoner had not, of his own means, furnished the sheriff with money to pay the fees. If the prisoner did furnish the money (and the fact is not negatived by the answer), Miner had no right to demand the fees of Gill, and the latter was under no obligations to pay them if demanded.

(*c*.) But aside from these objections to this answer—did Gill's failure to pay the jail fees, as stated in the answer, authorize Miner to discharge the prisoner?

It is clear, from *Wadsworth* v. *Wetmore et al.*, 6 Ohio Rep. 438, that as the law stood in 1834, the prisoner could not have been lawfully discharged for the reason aforesaid.

There was then no provision requiring the plaintiff in execution to pay the jail fees—the county was not bound to pay them; and, therefore, as declared by the court, page 441, " the debtor then must furnish the means for his own support; he must subsist by charity, or become a township

charge." And in that case, it was held that it would be the duty of the overseers of the poor to afford relief.

By the common law the debtor must support himself, or be supported by private charity. Same case, 439. · It is, therefore, clear that independent of statutory provision, the creditor is not bound to pay the jail fees.

But section 173 of the code provides, "that any person causing another to be committed to jail under the provisions of this chapter, shall be liable, in the first instance, for the jail fees, and shall, if required by the jailor, pay such fees weekly in advance; and such fees, so paid, shall be a part of the costs of the case."

Does this provision authorize the sheriff to discharge? We say, no.

It might be, possibly, that a failure of the creditor to advance the jail fees should, in certain cases, result in a discharge of the prisoner; but the sheriff is not, of his own mere motion, to discharge him. The case is covered, in our judgment, by section 486 of the code, and the discharge is to be by the court or judge therein mentioned.

As to section 168 of the justices' code, our point is, that it has no application, except to cases where the prisoner is committed by a justice of the peace.

*R. B. Warden* and *H. C. Noble,* for defendant in error:

The defense in the fifth answer proceeds upon two assumptions of law:

1. That a plaintiff can not maintain his action for escape, if the *arrest was illegal and fraudulent.*

2. That it can not be maintained, if the arrested party, at the time of the arrest, was *privileged* therefrom.

We are aware that there are many dicta, both in the opinion of judges and in text books, which seem to forbid any defense to an action for escape, except an act of God or the king's enemies; but we feel assured that such is not the true state of the law.

As to the first proposition, let us observe, that an action for a *voluntary* escape does not imply a *willful* release of the

14

prisoner. Almost every case of escape is a voluntary escape, even though the officer be careful of the interests of the creditor.

Thus, where a prisoner is found, in the night-time, out of the apartment in or belonging to the prison, and in the yard appurtenant to the jail. 3 Mass. 86. So, if a prisoner, in the night-time, is found in an apartment not appropriated to the use of prisoners, though the building belong to the county, and is within the limits of the jail-yard. 7 Mass. 200; 10 Mass. 173; 8 Ib. 373.

So, arresting a deputy jailor, and leaving him at the jail, in the absence of the sheriff, when no one but he is in charge of the prison. 6 Mass. 310. So, if the sheriff be put in jail by the coroner. 6 Johns. 22.

Being carried beyond the prison limits, by force, is an escape by the prisoner. 10 Mass. 206.

Liberating a prisoner from prison, on the certificate of the magistrates that he had taken the proper oath (it appearing that they had administered a wrong oath), is an escape. 12 Mass. 319.

Mistake in the bond for prison limits, and the prisoner let at large thereon, is an escape. 14 Pick. 523.

So, an improper discharge on *habeas corpus.* 5 Watts, 141–4. Also, an erroneous discharge of a United States prisoner, under a bond for insolvency under a state law. 3 McLean, 97. So, a discharge on a void writ. 5 Johns. 115.

It thus appears that the cause of action is an extremely technical one, and courts should only enforce such where the claim of the plaintiff is clearly made out, and perfectly fair and honest.

The plaintiff, to maintain his action for an escape, must establish: 1st, a valid judgment; 2d, the issuing of valid process; 3d, a legal arrest; 4th, an escape without his assent or covin.

A want of jurisdiction in the court is a good defense to such action. *Austin* v. *Fitch,* 1 Root, 285; Buller's N. P 64 and 65.

Gill *v.* Miner.

A void process is a defense to such action. *Kidder* v *Parker*, 18 Verm. 454.

Also, that the escape was by the fraud and covin of the party really interested in the judgment. *Hickocks* v. *Jones*, 1 Moody & Mal. 59; 22 Eng. Com. L. 303.

So, as it seems, where the arrest is procured by trick or fraud of the plaintiff. *Doe* v. *Trye*, 5 Bing. N. C. 573; 35 Eng. Com. L. 234. Or is illegal. 7 B. & C. 86; 8 B. & C. 124.

The proposition, where the arrest is by a trick or fraud, is substantiated by all the principles governing such actions.

1. No cause of action can arise out of the *fraud* of the plaintiff. *Ex dolo malo non oritur actio.*

So far as this maxim applies to cases of contract, the principle is fully recognized, and no authority need be cited. The rule is, however, broadly stated in *Holman* v. *Johnson*, Cowp. 341. But it applies also to actions of *tort.* *Gregg* v. *Wyman*, 4 Cush. 322; *Robeson* v. *French*, 12 Met. 24; *Bosworth* v. *Swansey*, 10 Met. 363; *Duffey* v. *Gorman*, 10 Cush. 45; *De Witz* v. *Hendricks*, 2 Bing. 314 (g. E. L. L. 417); *Firaz* v. *Nicholls*, 2 C. B. 501–52, E. C. L. 501; *Spalding* v. *Preston*, 21 Verm. 9; *Sailly* v. *Smith*, 11 Johns. 500; *Hunt* v. *Bell*, 1 Bing. (8 E. C. L. 219.)

2. A trick in the employment or service of a legal process is *fraudulent*, and utterly condemned by all courts. *The Countess of Rutland's case*, VI Rep. 53; *Barlow* v. *Hall*, 2 Anstruther, 461; *Loveridge* v. *Plaistow*, 2 H. Black. 29; *Luttin* v. *Beuniu*, 11 Mod. Rep. 50; *Birch et al.* v. *Prodger*, 4 Bos. & Pul. 135; *Exparte Goodwin*, 1 Atk. Rep. 152; *Ilsley* v. *Nichols*, 12 Pick. 270; *Wells* v. *Gurney*, 8 B. & C. 769; *Goodwin* v. *Lordon*, 1 Ad. & Ellis, 378; *Carpenter* v. *Spooner*, 2 Sand. 717; *Gonpil* v. *Simmons*, 3 Abbott's Prac. 474; *Leaver* v. *Robinson*, 3 Duer, 622.

See, for cases under extradition clause of the constitution: *Shaw* v. *Spooner*, 9 N. H. 192; *Richardson* v. *Duncan*, 3 N. H. 508; *Bowen & McNamee* v. *Buck*, 28 Verm. 308.

I. The fifth answer, we claim, sets out a trick, or illegal contrivance by which this arrest was made, and therefore

the arrest is illegal and void, or at least a fraudulent act, in that which is a necessary part of the plaintiff's case, and therefore he can not recover.

In answer to the argument as to the legal effect of the said answer, we refer to the following authorities: Buller's N. P. 172; *Richardson* v. *Duncan*, 2 N. H. 508, 511; *Watkins* v. *Baird*, 6 Mass. 506; *Shaw* v. *Spooner*, 9 N. H. 197; *Bowen & McNamee* v. *Buck*, 28 Verm. 308–315; 2 Chit. Pl. 612*d*, and 613 and notes.

II. But this fifth answer also includes the defense of privilege:

1. It has been expressly decided that *privilege from arrest* is a good defense in actions for *escape*, by two of the best American judges. *Ray* v. *Hogeboom*, 11 Johns. 433; *Green* v. *Edson*, 2 N. H. 293. See 9 Misso. 794; 21 Wend. 353.

2. Is a party to a *criminal action* "*a suitor*" under our statute, and therefore privileged? S. & C. St. 84, sec. 5. This is an old law re-enacted. It began in 1799. 1 Chase, 257. It was allowed in New York to a defendant in a *criminal case. Bours* v. *Tukerman*, 7 Johns. 538. And so in the *Irish* courts, as appears by cases cited in *Hare* v. *Hyde*, 3 Eng. L. & Eq. 485; viz: *Callum* v. *Sherry*, 1 Alc. & Nap. 125; *The King* v. *McLaughlin*, Ibid. 150; *Kelly* v. *Barnwall*, Cook & Alc. 94.

It is true that the English courts, and some American courts, have refused to allow this privilege to a defendant in a criminal action. See *Hare* v. *Hyde, ubi supra; Goodwin* v. *Lordin*, 28 Eng. C. L. 186; *Lucas* v. *Albee*, 1 Denio, 666; *Williams* v. *Bacon*, 10 Wend. 666. But these cases proceed upon the ground that this privilege is allowed as a privilege of the courts. Here it is a grant by *legislative* enactment.

See the argument of John A. Spencer in *Williams* v. *Bacon*, 10 Wend. 636; and also consider the character of the criminal arrest here in connection with the remarks of the court in *Wheeler* v. *Barry*, 5 Verm. 579.

The reply to this answer, 5, sets up that this question was determined by the decision of the court, on a motion by the arrested person, against him, before the escape, which judg-

ment is in force, and therefore Miner can not avail himself of it.   1st. The parties were not the same, nor privies. 1 Greenl. Ev., sec. 523.   2d. The form of action, or method of presenting the question, is altogether different.   Ibid. 524, 529.

III.  To the question of jail fees, the following provisions of the statutes are referred to: Sec. 11, 1 S. & C. 747; sec, 173 of the code; sec. 168 of the justices' code.   By them, jail fees may be demanded in advance.   If the justices' code, sec. 168, does not give the remedy, in every case, the sheriff is without remedy, in case the fees are refused.

BRINKERHOFF, J.—The record presents two questions of law, which control the whole case, and which only we propose to consider.

1. The first question is made by the plaintiff's demurrer to the third answer, and is this: Where a judgment debtor, in a civil action, is imprisoned under an order of arrest issued on the judgment, and the sheriff or jailor demands from the judgment creditor  the payment of jail fees weekly in advance, and such demand is not complied with, is the sheriff thereupon justified in permitting his prisoner to go at large?   We think he is so justified; and that the court below did not err in overruling the demurrer to the third answer.

Section 173 of the code of civil procedure provides, that " any person causing another to be committed to jail under the provisions of this chapter, shall be liable, in the first instance, for the jail fees, and shall, if required by the jailor, pay such fees weekly in advance; and such fees, so paid, shall be a part of the costs of the case."

This right to demand the payment of jail fees is not the right of the prisoner, nor does it concern him; it is the right of the sheriff, and is his personal concern.   If the sheriff may not discharge the prisoner on demand and non-payment of jail fees, what must he do?   Must he sue the creditor, and in the meantime subsist the prisoner at the risk of never being paid for it?   Must he call in the overseers of the poor to

feed him ? or must he procure a writ of *habeas corpus*, and in that way have him discharged ? We think it would be unreasonable to suppose that the legislature intended to impose any such forms or burdens upon the sheriff; and that when a judgment creditor, having resorted to the extreme remedy of imprisonment, makes default, after due demand made, in providing for the subsistence of his debtor, he virtually assents to his discharge. At all events he has no right to complain of it. The 168th section of act of March 16, 1853, " of the jurisdiction and procedure before justices of the peace," etc., provides:

" It shall be lawful for the sheriff or jailor, receiving any person imprisoned on execution issued *on any civil proceeding*, at any time, when there is no money in his hands to pay for the sustenance of such prisoner, to discharge him from prison."

Now, the terms in this statutory provision are quite broad enough to cover the question before us; but, inasmuch as the statute in which it is found is one concerning " the jurisdiction and procedure before justices of the peace," its application to cases of imprisonment, under process issuing from courts of record, is questioned. Be this as it may, it is at least so distinct an indication of legislative policy, as to render it safe for us to make its provisions a rule of decision in analogous cases.

But it is objected that it does not appear from the answer, but that the prisoner himself had the means of providing for his own subsistence. This is not necessary. The statute makes the creditor " liable *in the first instance* "—not the debtor.

Again, it is objected that the answer does not show that the sheriff discharged the prisoner *for the reason* that the jail fees were unpaid. But the motive of the sheriff is matter of indifference, if he had a legal justification for his act.

2. The second question is, whether, in an action against a sheriff for permitting the escape of a prisoner in custody on civil process, and such prisoner is by law privileged from arrest, the sheriff can avail himself of such privilege in bar of

the action? This question is raised by the overruling of the demurrer of the plaintiff to the amended answer, No. 5, and the exception thereto.

Whether the facts stated in this answer make out a case of privilege from arrest in behalf of Seiber, we do not propose to consider; but only whether, supposing such privilege to have existed, it can be made available to the sheriff in this action.

The fifth section of the act of June 1, 1831, "privileging certain persons from arrest and imprisonment" (3 Curwen's St. 2520), provides:

"That the associate judges of the several courts of common pleas within this state, during the sitting of their respective courts, and all attorneys, counselors at law, clerks sheriffs, coroners, constables and criers, and all *suitors*, witnesses and jurors while attending court, *and while going to and returning from court, shall be privileged from arrest.*"

The tenth section of said act provides:

"That if any person shall be arrested contrary to the provisions herein contained, such person may and shall be discharged by writ of *habeas corpus*, or in a summary way by motion before the court from which the process shall have issued, at the costs of the party swearing out such process."

The exemption from arrest of the prisoner, in this case, is claimed on the ground of his being a suitor in court at the time of his arrest. Now, it will be observed that the above quoted fifth section of the act, which provides for the exemption of a suitor, nowhere declares the arrest of any person designated in that section to be void; the act imposes no penalty upon an officer for making such arrest, nor is it any where intimated that the officer making the arrest is empowered to determine the question of exemption, and to release the prisoner in case he shall find him privileged from arrest. Indeed, in the absence of clear and definite legislation on this subject, it is difficult to suppose that the legislature ever intended to confer such power. Whether, on a given state of facts, a person is privileged from arrest, may often become a nice and difficult question of law, for the determination of

which constables, sheriffs and their deputies are not generally supposed to be eminently fitted; and the power, if given, and to be exercised at their peril, would involve risks and responsibilities by no means desirable. This question is very different from that arising on the demand and non-payment of jail fees. There, no complex questions of law or fact can arise. Here they may. There, the sheriff has a direct personal interest. Here, so far as we can see, he has none. And while the law is silent as to any right of the officer to discharge the prisoner, the tenth section of the act referred to distinctly points out and provides the manner in which, and the authority by which a privileged person may be discharged from arrest; to-wit, on *habeas corpus*, and on motion to the court issuing the process in virtue of which the arrest has been made. These remedies, one or both, are always and readily available. And if, either on *habeas corpus* or on motion, the court or judge should err, to the prejudice of the prisoner, the ordinary remedies for the correction of error are open to him.

It will be observed that the statute denominates these exemptions, *privileges* from arrest. Such we think they are. Privileges—personal privileges—privileges personal to the party arrested, which he may waive or insist upon as he may choose; and with which the officer making the arrest, under process regular on its face, and issued by a court of competent jurisdiction, has nothing to do, except to obey such process until it is superseded by an order of paramount authority, and to see to it that the prisoner is furnished with reasonable facilities to apply for his discharge on *habeas corpus* or on motion.

These views, we think, are well sustained by *Tarlton* v. *Fisher*, Douglass, 671; *Gyer's Lessee* v. *Irwin*, 4 Dallas, 107; *Chase* v. *Fish*, 16 Maine, 132. See also notes to *Hare* v *Hyde*, 3 E. L. & E. R. 436.

For error in overruling the demurrer to amended answer No. 5, the judgment of the court of common pleas will be reversed, and the cause will be remanded to that court for the

trial of the issue of fact, remaining undisposed of, as to the demand and non-payment of jail fees.

SUTLIFF, C.J., and PECK, GHOLSON and SCOTT, JJ., concurred.