Okey, J.
Three questions are presented. First, as to-the amount legally due on the note; secondly, whether the *146 the court erred in excluding certain evidence; and, thirdly, whether there is error in the judgment as to costs.
1. There is conflict in the evidence, but it is with respect to immaterial matters. True, an officer of the bank testified: “We did not think of renewing any old debts. The question of the amount due on the old notes, or of renewing "them, was not before us, or considered by the board at all. 'There was no agreement to renew, but only to loan.” But when the facts are considered, they fully support the finding that the real transaction was simply a renewal of usurious loans.
Where interest at a rate exceeding that allowed by law is retained or stipulated for, the contract is, under the laws ■of this state, invalid only as to the excess; while under the ■30th section of the national banking act, “ the statute ■operates on the instrument given for the loan, and, in ■effect, declares it to be invalid as to the entire interest, but •valid and binding as an obligation for the payment of the principal.” First National Bank v. Garlinghouse, Shunk v. First National Bank, 22 Ohio St. 492-502, 508; Hade v. Mc Vay, 31 Ohio St. 231. But it has been decided that under ■the laws of this state, in an action on a note given in renewal, where the original note embraced illegal interest, the consideration may be inquired into, and the illegal interest ■deducted. Baggs v. Loudenback, 12 Ohio, 153. And see Tyler on Usury, ch. xxx. The same principle applies in ■cases arising under the national banking' act (Overholt v. National Bank, 82 Pa. St. 490); though, as we have seen, in those cases the whole of the interest must be deducted.
Under some circumstances, no doubt, one note is regarded .as merged in, or discharged or satisfied by another, so that no suit can be brought on the former; while, in others, the right to sue on an original note is unaffected by the execution and delivery of another note, based on the same consideration. But the principle of those cases has no application here. The inquiry in this case is whether the real ■transaction was an extension of the time of payment of the -original loans; and it is quite clear to us that it was. It is *147 .also clear, in matter of law, that none of the notes coulcl bear interest, for the reason that their interest-bearing power was destroyed by the illegal agreement; and, therefore, payments made generally could only apply to the principal. The court below proceeded on that principle in ascertaining the amount due to the plaintiff- and' hence the finding is correct. The case is wholly unlike Shinkle v. First National Bank, 22 Ohio St. 516; and the cases in which payments, made generally, have been applied first to the payment of interest, have, for the reason stated, no application here.
2. Did the court err in refusing to compel Thomas to answer the question asked on cross-examination, for the purpose of impairing his credibility ? The capital stock of the bank is $120,000. Section 29 of the national banking act provides, among other things: “ That the total liabilities to any association, of any person,' or of any company, corporation, or firm, for money borrowed, including in the •liabilities of a company or firm the liabilities of the several members thereof, shall at no time exceed one-tenth part of the amount of the capital stock of such association actually paid in.” 13 TJ. S. Stats, at Large, 108. Section 9 of the ■same act provides, among other things, that a director “ shall take an oath that he will, so far as the duty devolves on him, diligently and honestly administer the affairs of such association, and will not knowingly violate, or willingly permit to be violated, any of the provisions of this act.”
The matter concerning which the counsel made inquiry, on cross-examination of Thomas, was not relevant to the issue. And, as held in Wroe v. The State, 20 Ohio St. 460 : ■“ The limits to which a witness may be cross-examined on matters not relevant to the issue, for the purpose of judging ■of his character and credit, from his own voluntary admissions, rests in the sound discretion of the court trying the ■cause.” See State v. Carson, 66 Maine, 116. Hence, there was no error in refusing to compel the witness to answer. "We need not determine what the duty of the court would have been if the answer sought had related to the issue.
*148 Recurring, in this connection, to the defense, it is clear that Thomas, the principal in all the notes, was no more estopped from setting up the illegality, by reason of his position as director than if he had not been officially connected with the bank. Goudy v. Gebhart, 1 Ohio St. 262. It is equally clear that, notwithstanding the unauthorized character of the loan, his contract to pay the principal may be enforced. Gold Mining Co. v. National Bank, 96 U. S. 640.
3. Did the court err in rendering judgment against the plaintiff for the costs made on the second trial ? The act. of 1852, relating to appeals to the district court, provided, “ That if the plaintiff’ appealing shall not recover a greater sum in the district court than in the court from which said appeal is taken, exclusive of costs and interest which may have accrued since the rendition of the judgment in the said court, he shall pay all costs that may have accrued in the district court.” 2 S. & C. 1168. No corresponding-provision having been made in the act of 1858, in relation to second trials (2 S. & C. 1155), the question is, whether the provision, which in terms is only applicable to the district court on appeal, may, by a fair construction, be made applicable to second trials in the court of common pleas.
The provision, as to causes and matters appealable, was, when enacted, quite comprehensive. Appeals were permitted, where the court of common pleas had original jurisdiction, “from all final judgments in civil cases at law,, decrees in chancery, and interlocutory decrees dissolving injunctions.” But, under that system, the district court became overburdened with business. The second trial act was passed, as stated in its title, “ to relieve district courts.” It provided, among other things, that instead of appealing to the district court, a party might have a second trial in the court of common pleas, if that court- had original jurisdiction of the cause, and an issue of fact was joined therein which either party had the right to have tried by a jury; and the act further provided, that the district court should still have jurisdiction, as in the act *149 ■of 1852, except as to the cases for which a second trial was provided. If a second trial was taken by either party, a bond was required, and the trial took place in the ■same manner, and the lieu was preserved, as in cases appealed. Taken together, the statutes secured the right of retrial, either in the district court or court of common ■pleas, as the case might be, in precisely the same causes and matters provided for in the original act, and no others. As originally enacted, the provision, as to costs, was so comprehensive that the plaintiff who appealed, and failed to recover more than in the court below, was required to pay the costs on appeal, although an issue of fact was joined which either party had the right to try to a jury. No change has been made in the terms of the provision; but no reason can be given why the provision should not apply to a second trial in the court of common pleas. Nor can there be any doubt that a proper construction of the statutes requires us to hold that it does so apply. It is to be inferred, that in framing statutes relating to one subject, the legislature was governed by one spirit and policy, and intended the laws should be consistent and harmonious. .In Gill v. Miner, 13 Ohio St. 182, the court went further in ■applying to one court provisions, in terms applicable to •another, than we are required to go in this case. There the question was as to the liability of a sheriff for an escape, where the debtor was imprisoned on process from the court of common pleas, and the creditor failed, on demand, to pay the jail fees weekly in advance. The court say : ■“ The 168th section of the act of March 14, 1853, ‘ of the jurisdiction and procedure before justices of the peace,’ etc., provides: ‘It shall be lawful for the sheriff or jailor, receiving any person imprisoned on execution issued on any civil procedure, at any time, when there is no money in his hands to pay for the sustenance of such prisoner, to ■discharge him from prison.’ Now, the terms in this statutory provision are quite broad enough to cover the question before us; but, inasmuch as the statute in which.it is found is one concerning ‘ the jurisdiction and procedure *150 before justices of the peace,’ its application to cases of imprisonment, under process issuing from courts of record, is. questioned. Be this as it may, it is at least so distinct an indication of legislative policy, as to render it safe for us to-make its provisions a rule of decision in analogous cases.”
It is said, however, that there was no right to a second trial in this case; that the provisions on the subject of second trials are inapplicable ; and it is insisted that the parties, having appeared in court voluntarily, and submitted to a second trial, the plaintiff was entitled to a judgment, for costs, under section 551 of the civil code, which provides : “ Where it is not otherwise provided by this and other statutes, costs shall be allowed, of course, to the plaintiff upon a judgment in his favor, in actions for the recovery of money only, or for the recovery of specific, real, or personal property.” The proceeding, as we have-seen, was under the civil code (sec. 53.4, et seq.), to modify a judgment rendered on a warrant of attorney, on the ground that it embraced illegal interest; and it is said that, in all the subsequent stages the case remained merely a proceeding under those provisions. If we admit this to be-true, does it follow that section 551 controls the case ? In a case under the former practice it was said : “ It has long-been the unquestioned doctrine in this state, that judgments-rendered upon warrants of attorney may, on motion, upon a proper case being made, be opened and the party let in to defend.” Bank of Wooster v. Stevens, 1 Ohio St. 233-237.. And in Critchfield v. Porter, 3 Ohio, 518, in speaking of the-power to set aside a judgment improperly entered, Sherman, J., said: “ The relief which is now given by courts of' law, upon motion, is equitable in its character, extended upon equitable terms, and so framed as to protect the rights of one party, without sacrificing or jeopardizing those of the other.” And such is clearly the character of the proceeding by petition under the code, section 534, et seq. True, in a case like this, either party would have the right to a trial by jury (Frazier v. Williams, 24 Ohio St. 625 ; Watson v. Payne, 25 Ohio St. 340); but that does not de *151 termine the question of costs. There would be very little reason in saying to a defendant who, after resistance, perhaps vexations, had obtained the precise modification of a judgment which he had prayed for, that he must pay all the costs. The proceeding requires nothing of the sort. It is of an equitable nature, and the question of costs is determined according to the code, sections 550 and 554, which vest in the court a discretion as to costs in cases of an equitable nature, and on motions, and the like. Hence, if the last trial can be regarded as strictly in and a part of the proceeding to modify, the court had power to render judgment against the plaintiff for the costs on the second trial. And even if this could be doubtful, the plaintiff is estopped to deny that the second trial was taken in pursuance of the statute then in force on the subject. It follows that, however the retrial may be regarded, there was no error in the judgment for costs.
Judgment affirmed. .